IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Lighthouse Consulting Group, LLC<br><br>　　　　Plaintiff,<br><br>v.<br><br>SunTrust Bank,<br><br>　　　　Defendant. | CIVIL ACTION NO. 2:19-CV-00340-JRG<br><br>**LEAD CASE**<br><br>**JURY TRIAL DEMANDED** |

### TRUIST BANK'S (F/K/A SUNTRUST BANK) OPPOSED MOTION TO STAY

Truist Bank,[1] formerly known as SunTrust Bank, as the successor to SunTrust by merger (hereinafter "Truist" or "Defendant"), files this motion to stay the above-captioned case pending resolution of a declaratory judgment action filed in this Court by NCR Corporation ("NCR"), the manufacturer of the accused products (the "Manufacturer Action"), against Lighthouse Consulting Group, LLC ("Lighthouse"). Lighthouse has asserted counterclaims against NCR in this Manufacturer Action that are identical to those it has asserted against Truist. For the reasons set forth below, a stay is proper under both the customer-suit exception and the general principles governing stays in the Eastern District of Texas.

**I.   INTRODUCTION**

Lighthouse filed patent infringement cases against Truist and, at the time of this motion,

---

[1] SunTrust merged into Branch Banking and Trust Company on December 7, 2019, with Branch Banking and Trust Company as the surviving entity. On December 7, 2019, Branch Banking and Trust changed its name to Truist Bank. The proper name for the Defendant in this matter going forward is Truist Bank.

eight other NCR customers (collectively, the "Customer Suits"),[2] alleging that the mobile check deposit software that NCR supplies to them (the "NCR Accused Products") infringes U.S. Patent Nos. 8,590,940 ("the '940 Patent") and 7,950,698 ("the '698 Patent")[3] (collectively, the "Asserted Patents").

This lawsuit should be stayed pending resolution of the Manufacturer Action. Such a stay would benefit judicial economy and serve the interests of justice. Because Truist is a customer of the NCR Accused Products, a determination in the Manufacturer Action as to whether the Asserted Patents are invalid and/or infringed would apply equally to the claims at issue in this case. Thus, resolution of the claims by NCR will dispose of the claims asserted here, serving judicial economy and efficiency.

## II.     LEGAL STANDARD

### A.     The Power to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for

---

[2] Lighthouse's cases against NCR customers include the following cases filed in the Eastern District of Texas: *Lighthouse Consulting Group, LLC v. Bank of America, N.A.*, No. 2:19-cv-00250-JRG-RSP (E.D. Tex. filed July 12, 2019), *Lighthouse Consulting Group, LLC v. CitiGroup, Inc.*, No. 2:19-cv-00264-JRG-RSP (E.D. Tex. filed Aug. 5, 2019), *Lighthouse Consulting Group, LLC v. SunTrust Bank*, No. 2:19-cv-00340-JRG-RSP (E.D. Tex. filed Oct. 15, 2019), and *Lighthouse Consulting Group, LLC v. LegacyTexas Bank*, No. 2:19-cv-00374-JRG-RSP (E.D. Tex. filed Nov. 15, 2019); the following cases filed in the Western District of Texas: *Lighthouse Consulting Group, LLC v. Fifth Third Bank*, No. 6:19-cv-00596-ADA (W.D. Tex. filed Oct. 13, 2019), *Lighthouse Consulting Group, LLC v. Regions Bank*, 6:19-cv-00601-ADA (W.D. Tex. filed Oct. 15, 2019), *Lighthouse Consulting Group, LLC v. Morgan Stanley*, 6:19-cv-00599-ADA (W.D. Tex. filed Oct. 14, 2019), and *Lighthouse Consulting Group, LLC v. Capital One, N.A.*, No. 6:19-cv-00622-ADA (W.D. Tex. filed Oct. 18, 2019); and the following case filed in the District of New Jersey: *Lighthouse Consulting Group, LLC v. The PNC Financial Services Group, Inc.*, No. 3:19-cv-19004-FLW-DEA (D.N.J. filed Oct. 15, 2019). A number of these cases were recently consolidated by this Court in this, the lead, case.

[3] Reissued as U.S. Reissue Patent No. 44,274.

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant such a stay, "this Court considers: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *CyWee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *3 (E.D. Tex. Aug. 22, 2018) (internal quotation marks and citation omitted).

### B. The "Customer-Suit Exception"

Under the "customer-suit exception," "when 'litigation is against or brought by the manufacturer of [allegedly] infringing goods, it takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Katz v. Lear Siegler. Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *see also CyWee*, 2018 WL 4002776, at *4.

In evaluating the potential application of the customer-suit exception as an alternative ground for a stay, "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463. The Federal Circuit has clarified that "the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer — not every issue — in order to justify a stay of the customer suits." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Overall, and similar to the above principles for whether to grant a stay generally, "the guiding principles" for whether to apply "the customer suit exception . . . are efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

To assess whether judicial resources will be saved under the customer-suit exception, this Court "analyzes three factors: (1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the

later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee*, 2018 WL 4002776, at *5 (internal quotation marks and citation omitted). "However, the Court does not apply the factors in a mechanical or precise manner and instead adopts a flexible approach" in order to make this assessment. *Id.*

Under Federal Circuit precedent, staying customer cases pending resolution of manufacturer claims is not only permitted, but also the preferred approach when the issues therein will be disposed of or significantly narrowed by the manufacturer case. *See e.g.*, *In re Nintendo of Am. Inc.*, 756 F.3d 1363 (Fed. Cir. 2014) (severing and staying patentee's claims against retailers); *In re Google Inc.*, 588 Fed. App'x 988 (Fed. Cir. 2014) (staying claims against smartphone companies directed to developer's operating system, pending outcome of declaratory judgment action filed by the developer). These Federal Circuit decisions, as well as *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990), recognize that a Court should stay cases against customers in favor of cases against manufacturers. In *Nintendo*, the Federal Circuit ordered the district court to grant the petitioners' motion for a stay, holding that the manufacturer case "*must* proceed first." *Nintendo*, 756 F.3d at 1366 (emphasis added). The Court of Appeals recognized that issues of infringement were common to Nintendo and its retailers, and that if the plaintiff were to collect royalties from Nintendo, such recovery would preclude suit against the retailers. *Id.*

Although the customer-suit exception originated in the context of staying an earlier-filed infringement case against customers in one jurisdiction in favor of a later declaratory judgment suit filed by the manufacturer in another jurisdiction, courts have since applied it when the customers' and manufacturer's claims were both pending in the same jurisdiction, and even in the same suit. *See, e.g.*, *Nintendo*, 756 F.3d at 1366 (severing the manufacturer in a combined manufacturer-retailer patent infringement suit, transferring the manufacturer suit to the manufacturer's home district, and staying the retailer suit pending the outcome of the manufacturer

suit); *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-CV-1516-WSD, 2015 WL 3819336, at *2 (N.D. Ga. June 18, 2015); *ThermaPure, Inc. v. Temp-Air, Inc.*, No. 10-CV-4724, 2010 WL 5419090, at *9–10 (N.D. Ill. Dec. 22, 2010); *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010).

### III. ARGUMENT

#### A. Adjudication of NCR's claims against Lighthouse will resolve all issues involving Truist.

Because NCR supplies the instrumentality that Lighthouse accuses of infringement, all major issues relating to non-infringement and invalidity will be addressed and resolved in the Manufacturer Action, which will obviate the need to litigate those same issues in the Truist action or the other Customer Suits. *See Spread Spectrum*, 657 F.3d at 1358.

Throughout its Complaint, Lighthouse alleges that Truist infringes based on features and functionality of the mobile imaging technology in the bank's "Mobile Checking Application." Those features and functionality are provided to Truist by NCR. Declaration of Gary B. Westmoreland ("Westmoreland Decl.") ¶ 7. Indeed, in one of the Customer Suits, Lighthouse admits that NCR is the provider of the technology at issue. *See* Compl. ¶ 34, *Lighthouse Consulting Group, LLC v. Bank of America, N.A.*, No. 2:19-cv-00250-JRG-RSP (E.D. Tex. filed July 12, 2019) ("Mitek mentions in its 10-Q filing that Fiserv or NCR provides Bank of America's mobile imaging technology."). Truist licenses that technology from NCR and uses it to process customer transactions under the Truist brand. Westmoreland Decl. ¶ 7.

In the mobile device context, both the Federal Circuit and the Eastern District of Texas have recently held that infringement claims against parties alleging infringement based on mobile device software provided by third party suppliers should be stayed pending the suppliers' declaratory judgment claims. *See Google*, 588 Fed. App'x 988; *CyWee*, 2018 WL 4002776.

Moreover, other courts have applied the customer-suit exception to stay customer cases that alleged patent infringement by banks' use of NCR's deposit technology. *See Capital Sec. Sys.*, 2015 WL 3819336, at *1–2; *Capital Sec. Sys., Inc. v. ABNB Fed. Credit Union*, No. 2:14CV166, 2014 WL 5334270, at *1, 5 (E.D. Va. Oct. 20, 2014). In those cases, as here, the banks used NCR's accused technology branded in their own names.

In applying the customer-suit exception to NCR customers Capital One and ABNB, the Eastern District of Virginia found that the "the issues of different damages calculations and the alleged 'willfulness' of ABNB's infringement [we]re not major issues." *Capital Sec. Sys.*, 2014 WL 5334270, at *4.[4] In addition, if Lighthouse were to collect royalties from NCR, such recovery would preclude recovery from NCR's customers, including Truist. *See, e.g.*, *Nintendo*, 756 F.3d at 1366 (rejecting a similar damages argument and noting that "[the plaintiff] has no claim against the Retailers unless the infringement claims against [the manufacturer] are resolved in favor of [the plaintiff]."); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find [the manufacturer] liable, and allows [the patent owner] to collect royalties . . . [the patent owner] cannot then in turn collect royalties from the entity to whom the infringer sells the product.").

In sum, adjudication of NCR's claims against Lighthouse will resolve all major issues involving Truist.

### B. The customer suit exception applies to Truist.

Because the Manufacturer Action has "the potential to resolve the 'major issues'

---

[4] Lighthouse's Complaint against Truist does not allege any facts relating to pre-suit willfulness, but it nevertheless includes in its prayer for relief a demand for treble damages due to "pre-suit knowledge."

concerning the claims against the customer," *Spread Spectrum*, 657 F.3d at 1358, the customer-suit exception applies to Truist and the present action should be stayed. Like Nintendo and its retailers, the "major issues" of infringement and invalidity are common to NCR and Truist. *See Nintendo*, 756 F.3d at 1366; *Spread Spectrum*, 657 F.3d at 1358. NCR licenses the mobile deposit solution rebranded by Truist and used in its mobile app, making NCR the real party in interest. Moreover, to the extent there are minor issues not resolved in the Manufacturer Action, such customer-specific issues can be addressed later, with the benefit of having major issues in the case narrowed and resolved.

Here, the facts unequivocally support staying this case under both the three-factor test set forth above to assess whether the customer-suit exception applies,[5] and the broader directive from the Federal Circuit to save judicial resources.

As to the three-factor test, NCR's mobile deposit customers, including Truist, are equivalent to a reseller. *See, e.g.*, *CyWee*, 2018 WL 4002776, at *6 (device manufacturer who received algorithms from Google was a "mere reseller"). Truist did not develop or create the mobile deposit technology that is used in the mobile app and accused of infringement in this case. Instead, Truist licenses that technology from NCR. Regarding the other factors, Truist has agreed to be bound by the decision in the Manufacturer Action, and NCR is its only supplier for the accused products. Westmoreland Decl. ¶ 7. Thus, the three-factor test is satisfied.

Rather than seeking discovery from Truist and all the other NCR customers that Lighthouse has sued across three districts, time and resources of the courts and parties involved can be saved by obtaining discovery and information related to the accused product directly from its supplier,

---

[5] *See CyWee*, 2018 WL 4002776, at *5.

NCR. As in typical customer cases such as this, it is abundantly clear that a stay will increase judicial economy, saving time and court resources, and avoid needlessly burdening customers who merely licensed a product that is now accused of infringement.

### C. The Truist suit should be stayed.

This case should be stayed because the customer-suit exception applies. Nothing more is needed, and staying such a case is not only permitted, but also strongly recommended, as evidenced by numerous decisions from the Federal Circuit, such as *Nintendo*, 756 F.3d 1363 and *Google*, 588 Fed. App'x 988, as well as decisions from this Court, such as *CyWee*, 2018 WL 4002776.

In addition, staying the case against Truist also comports with this Court's general analysis regarding the equities of whether to grant a stay. "When faced with a motion to stay litigation of an issue in [a] first-filed case, this Court considers: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *CyWee*, 2018 WL 4002776, at *3 (internal quotation marks and citation omitted). Each of these factors weigh in favor of granting Truist's motion to stay.

#### 1. A stay of the Truist suit will not prejudice Lighthouse.

As discussed above, staying Lighthouse's suit against NCR customer Truist simplifies the matter for the parties, and for the Court. It will also not unduly prejudice or present a clear tactical disadvantage to Lighthouse. For instance, as discussed, Lighthouse's infringement allegations against Truist relate to products licensed from the supplier, NCR. Thus, Lighthouse will have full access to relevant discovery on the accused products directly from NCR in the Manufacturer Action. Further, if necessary, any minor issues against Truist can be litigated after resolution of the claims by NCR. *See Refac Int'l, Ltd. v. IBM*, 798 F.2d 459, 460 (Fed. Cir. 1986) (rejecting plaintiff's argument that it will be "put out of court by the stay order" because "[t]he order staying

Page 8

the prosecution of claims against thirty-one defendants is a matter of case management within the discretion of the district court and does not put [plaintiff] 'out of court'").

There are also no "major issues" asserted against Truist that would not be resolved in the NCR case. For example, while Lighthouse includes in its prayer for relief a demand for treble damages due to "pre-suit knowledge," its Complaint against Truist does not allege any facts relating to pre-suit willfulness, and, thus, the claim, to the extent there is one, was improperly pled.

Conversely, failure to stay this case places a large and unnecessary burden on Truist and NCR. NCR has agreed to defend Truist and its other customers Lighthouse has sued. Therefore, NCR, Truist, and each of the other customers will be forced to undergo costly discovery and motion practice across numerous cases, even though resolution of the Manufacturer Action will dispose of all major issues in this case and the other Customer Suits.

In addition, all of the evidence relevant to Lighthouse's allegations — both documentary and witnesses — concerning the design, development, manufacturing, and operation of the accused products resides with NCR. NCR would also similarly possess any relevant financial information, such as revenue, costs, benefits, etc., of the NCR Accused Products. Imposing unnecessary defense costs on NCR and Truist (as well as the other targeted customers) is fundamentally unfair and will work to artificially drive up settlement demands. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (criticizing patentee acts that "exploit[] the high cost to defend complex litigation to extract a nuisance value settlement"). Thus, any balance of the equities clearly tips in favor of Truist and the granting of a stay in this case.

### 2. A stay of the Truist suit will simplify the issues in this case.

The real dispute is between Lighthouse and the supplier of the accused products, NCR. Customers such as Truist merely use NCR's software products. As discussed, Truist does not use any other supplier for such products, nor does Truist design or develop such products itself.

Westmoreland Decl. ¶ 7. Thus, Lighthouse's infringement claims, and Truist's non-infringement defenses, will depend on the design and function of the NCR Accused Products themselves, which information is under NCR's control. Truist will not have any materially relevant information on the accused products beyond what is already in the possession of NCR.

Furthermore, resolution of the claims by NCR will dispose of the claims against its customers, including Truist. To the extent Lighthouse succeeds on infringement counterclaims against NCR, it is well established that recovery on a judgment constitutes full compensation to the patent owner for related acts of infringement and bars further relief as against other entities. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 499 (1964). This "single recovery" or "full compensation rule" is simple: a patentee is entitled to full compensation for related acts of infringement, but the patentee, like any alleged tort victim, is not entitled to multiple recoveries for the same injury. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) ("Once full recovery is obtained from one infringer with respect to a particular infringing device, at most nominal additional damages may be awarded against another with respect to the same device."). "[T]he manufacturer is the true defendant in the customer suit. . . . [I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464; *see also Asustek Computers*, 126 F. Supp. 2d at 422.

Likewise, if during the Manufacturer Action NCR obtains a license to the Asserted Patents, they will be exhausted as to the accused software NCR licenses and provides to its customers, including Truist. *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 627 (2008).

Resolution of the claims by NCR will eliminate any need to resolve Lighthouse's claims against NCR's customers, including Truist. For example, if NCR succeeds on either its invalidity or its non-infringement claims, Lighthouse would be precluded from pursuing its allegations

against Truist. *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) ("The Kessler doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed."). Thus, resolution of the case as to the supplier, NCR, will effectively resolve this case for Truist, as NCR provides all the accused software products.

### 3. A stay is appropriate given the stage of this case.

This case is still in its early stages. To date, Truist has not yet filed an Answer. Furthermore, NCR plans to seek stays of the other Customer Suits as well. Thus, granting a stay in this matter will not interfere with or disrupt the Court's handling of Lighthouse's other cases.

## IV. CONCLUSION

For the foregoing reasons, Truist respectfully requests that this case be stayed pending resolution of the declaratory judgment suit filed by the supplier of the accused products, NCR.

RESPECTFULLY SUBMITTED,

*/s/ Harry L. Gillam, Jr.*
Stephen E. Baskin (PHV Pending)
Dara M. Kurlancheek (PHV Pending)
**KING & SPALDING LLP**
1700 Pennsylvania Ave, NW, Ste. 200
Washington, D.C. 20006-4707
Telephone: (202) 737-0500
sbaskin@kslaw.com
dkurlancheek@kslaw.com

Harry L. Gillam, Jr.
State Bar No. 07921800
**GILLAM & SMITH, L.L.P.**
303 S. Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
gil@gillamsmithlaw.com

*Attorneys for Defendant
Capital One, N.A.*

DATED:  December 20, 2019

## CERTIFICATE OF CONFERENCE

On December 12, 2019, pursuant to Local Rule CV-7(i), counsel for Defendant met and conferred with counsel for Plaintiff, and counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion.

*/s/ Harry L. Gillam, Jr.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(i) on December 20, 2019.

*/s/ Harry L. Gillam, Jr.*